I look forward to having you illuminate the issues for us. We'll hear from the appellant. Good morning, or I guess maybe good afternoon. My name is Jerry Schutza. I represent Abe Moss and D&Y Investments in this case. Of course, these proceedings, they're basically one and the same. I'll refer to them as to Moss. This case is an appeal from a summary judgment, which was granted, in which my client, Abe Moss, was the owner of a residential property in Houston, Texas, since September of 2009. And the judgment declared that that property that he had purchased back in September of 2009 was there was a lien in favor of Deutsche Bank, which basically takes the property away from him because of the values that were involved. The issues in this case are several. The first issue invokes, involves the notice, if any, is to be given by a superior lien holder to an inferior lien holder under Texas law. The second issue would be the application of Texas statutes, which limit the time period in which you can contest a deed that was to my client. And the final issue, of course, would be the issue of the evidence that was presented to the court as to Deutsche Bank's issue and ownership of the note. Now, there's a couple other matters I think that are very important for the court to consider in this case. The dispute arises from a foreclosure of a lien. It was a nonjudicial foreclosure. It was from a private lender in Texas. So we have two private lenders on a nonjudicial foreclosure sale. The second important matter is that Deutsche Bank, who are the plaintiffs in the lawsuit, sought relief only up for a violation of due process. They didn't file. Originally, they sought violations under the Texas tax code, but they abandoned it by filing it. And the only issue before the court is whether or not there was a violation of due process in this case. Now, Texas law, Texas real estate law, is extremely clear. Under Texas law and decisions of this court, I would point out, a lien holder, a superior lien holder in a nonjudicial foreclosure is not required to give notice of the foreclosure sale to an inferior lien holder. And there is Texas Supreme Court law after case after case that has held that. There is no notice that's required to be given to an inferior holder of a lien. In your briefs, did you discuss and apply Mennonite at all? No, I did not go into great detail to it. Did you go into any detail? I did not even cite the Mennonite case because we just stood on the proposition that in Texas law, it's clear that a superior lien holder is not required to give any notice to an inferior lien holder. Looking at the cases that you did cite, almost none of them discussed Mennonite either. This array of Texas Supreme Court in immediate cases is as if the whole doctrine, for whatever reason, had not been much recognized in Texas and practitioners. But in Security State Bank, the immediate court, whatever district that was, did address it. Was that not a nonjudicial foreclosure? It was not a nonjudicial foreclosure sale. And a very important point of this is that both Mennonite and the Security State Bank case were judicial foreclosures. But our law has said just availing yourself of the judgment process gives sufficient state action. You haven't disputed that proposition. Well, there was no judgment in this case. This was a nonjudicial case. There was no prior lawsuit. You made the argument that the due process is inapplicable here? I think it's totally inapplicable. This is a nonjudicial foreclosure sale between two private lenders. Okay, so you're saying no state action. That's your argument. That's correct. No state action at all. The Mennonite case, the Security State Bank case, Security State Bank case was a lawsuit filed by a taxing authority in San Antonio, Texas. It was a lawsuit that was filed under the Texas tax code. There was a lawsuit filed, and there was a tax sale conducted by the constable. That constituted state action. In this particular case, this was nonjudicial foreclosures from a private lender. The lender that foreclosed was Gonzales Financial Holdings. What happened was originally in this case was the original homeowner, Mr. Redarte, and his wife made a loan originally to Deutsche Bank, originally to Argent Mortgages in 2003, and then almost immediately never paid their taxes. And in 2006, Redarte, the homeowner, goes to Gonzales Financial Holdings, an independent lender in San Antonio, Texas, and borrowed money that they ended up using to pay their taxes. That was a private lien secured by a deed of trust. A deed of trust was foreclosed nonjudicially. There was no lawsuit that was filed. Security State Bank, there was a lawsuit filed by the taxing authorities. In this case, it's a nonjudicial foreclosure. The purpose of what somebody goes and borrows money for, if the court wants to extend that to say, well, you borrowed money on your home or this piece of property, you paid your IRS taxes, well, then that makes a difference. It shouldn't make any difference. These were two independent loans that were made, no state action, no foreclosure. You made your no state action argument to Judge Rosenthal? We did at the time. Well, the fact you didn't brief it makes me wonder if you did it to Judge Rosenthal either. We'll have to work with this issue, but it's a very due process, midnight issue. It's very much alive in this case. And you're ignoring it in your brief, even to make the arguments that you're making us now has not been helpful. Well, obviously, I could have probably done a better job. Well, that's what Judge Rosenthal ruled on, and you didn't even brief it. Well, she never – it was ever actually raised prior to that time, as I understood it. They cited the security – We are where we are. They didn't really go into Mennonite at the time. Judge Rosenthal brought it up on her own. Well, but wouldn't you say it was in the case by the time she ruled? When she ruled, it certainly was. I would think so. And where are we now? We are after that time. I understand. All right. Proceed. But Texas law is clear. I mean, I can give you cases where the Texas Supreme Court has said you don't have to give notice to an inferior lien holder. That's American Savings v. Music case, 531 Southwest Sec. 581, the Elbar case, which is cited in my brief. It's just clear that you don't have to give notice on a private nonjudicial foreclosure sale. And to extend that, I would even give this court a site where it wasn't on lien holders, but where somebody acquired an interest in the property, and this court specifically said notice was not required to be given to a person that acquired an interest subject to the lien. In that case, it's a Rodriguez v. Ocwen loan servicing, which . . . Well, Counselor, I think we have your argument. You're saying that this is a nonjudicial foreclosure. The Mennonite case, state security, whatever the name of the immediate court in Texas, all were judicial foreclosures. That's the distinction. That's the issue we have before us. It's not the state law stuff. And if you have anything else on that, on why Mennonite would not apply? I would cite a case, an early case in this court, Earnest v. Lowentritt, which is a 1982 case, which it specifically says a foreclosure sale is a private dispute. It's not a state action. I can also refer you to the Davis Oil case. The site on the Earnest-Lowentritt case is 690 Fed 2nd, 1198. The Davis Oil case discusses cutting off an interest. It was a mineral interest. That site is 873 Fed 2nd, 774. It's a 1989 case, and it specifically says the party that's charged with depriving that interest, which would be the lender or the trustee in the case, would have to be described as a quote-unquote state actor. And in this case, it's Gonzalez Financial. Gonzalez Financial is not a state actor. They're a lender. They created their lien with a deed of trust, and they foreclosed it nonjudicially. But the state law that you're relying on doesn't draw this distinction. The state law, as you urged in your brief, was that no notice is owed whether it's judicial or not. No notice is owed. Either no notice is owed or the statute of limitations would bar even had there been no notice, right? Right. That was the twin argument you made. Yes. I also said that— But did you accept that Mennonite throws that into doubt in the context of a judicial foreclosure sale? In a judicial foreclosure sale, I would say yes. Okay. So BEXAR is good law, but you claim that your distinctive situation is that it's a private sale, no state actor. That's the sum total of your argument now. On that issue, yes. There are other arguments I have, but that's not my entire argument. What other issue is there? Well, I issue two. I applied— Well, the Mennonite case goes to the extent, too, that says that a court can or a state can enact certain limitations on due process. You know, statutes of limitations, those types of statutes. You can limit someone's or take away someone's interest in property through a statute of limitation. And the Texas legislature, in enacting the statute, says you have to come in within a year to question a deed. I would submit that that's a reasonable limitation that would be on that. The Mennonite case goes into more detail. It's a two-year statute, but it didn't specifically say that a two-year statute by law is not sufficient. It was remanded back to a lower court for that particular reason, and I think that in this particular case the statute that was passed by the state legislature would be sufficient limitation and would be justification that they would have to comply with. Did the 2007 amendments to this eliminate somehow this problem? And since we're, if we were applying Texas law. The 2007 to the tax transfer statute? Well, the parties seem to agree that this case, if state law controls, is governed by the 2006 code. Yes. Okay, and so my question is would the amendments have changed the notice requirements? I couldn't find easily. Well, now under this type of a loan you have to come in as a home equity foreclosure and you have an expedited process. You have to file now to foreclose this type of lien. Yes, it's been addressed. You now have to file. It's exactly like a home equity foreclosure in Texas. You have to file a lawsuit. Now, it does, it gives you a fast track, and you can serve the defendants by mail. But you have to serve even subordinate lien holders? Yes, yes, under the Texas tax code you have to serve. And yet that didn't exist in the? That was not in effect at that time. The law is. You must know this law much better because I was looking at 32065B5 and 6, and I still thought you would have to notify by mail a subordinate lien holder, no? You were, what the amendment was you have to file a lawsuit. At the time you were supposed to notify them, but you'd have to file a lawsuit. The notice requirement is basically the same. You could serve them by certified mail. So if there was a lien holder that was of record, you were supposed to certify them, but the lender could do a nonjudicial foreclosure sale. In lieu of that? Without filing a lawsuit, but the notice you did, you were supposed to notify them at that time. Does the record reflect that Deutsche Bank was given that notice? No. What do you do with our opinion in Davis Oil Company? I'm sorry? What do you do with our opinion in Davis Oil Company where we evaluated whether there was state action to support a constitutional due process claim when a private entity foreclosed on property without giving notice? We held that the state action when the private party properly avails itself of an ex parte state procedure that extinguishes another lien holder's interest. The notion that there's no state action here is not so quick and easy. You're invoking a state procedure itself. Well, just simply to invoke a state procedure doesn't make it a state action. At least that's my understanding. Well, do you remember the case that he's just cited, the Davis Oil decision? Do I recall it? Yes. Yes, sir. But it would seem to stand for a different proposition than what you've just said. Well, that case involved primarily it was decided on the issue that that case was decided on was that it was a mineral interest. And it was so difficult to track the mineral interest that they said that they couldn't put the burden upon the foreclosing party. They couldn't figure out who the mineral interest would be and who would be entitled to notice. And it was decided on that issue. At least that's my recollection of the decision in that case. It was just too difficult of a task to figure out who was entitled to notices because of a mineral interest in the very nature in that particular case. So the decision in that case, as I saw it, was limited to that case. All right, counsel. Let's hear what Aquin has to say to all this. Thank you. Thank you. Well, I think you know what point we want to hear argument on. May it please the Court, Your Honor. Turning first to the issue cited by counsel relating to whether or not this was a private action as opposed to a state action, it sort of belies the facts in terms of the origination of their lien. Gonzales Financial Holdings was a tax lien assignee. They came into this whole transaction by virtue of having paid off the tax debt, taken a consent assignment of that tax lien, and also taking a deed of trust lien to secure a promissory note. Now, if counsel wants to assert that the lien that they foreclosed in 2009 was not a tax lien, we're perfectly willing to go with that because that means that their lien, which was originated in 2006, was originated three years after the lien that my client's hold and is therefore a subordinate lien in and of itself. However, they are contending that they have a superior lien that extinguished my client's lien. It was that which was foreclosed and gave title to Mr. Moss and then subsequently to DNY. The facts in this case are abundantly clear. The record at 214 shows that the mortgage lien at issue that my client's hold was created on November 10, 2003 and was filed of record on December 3, 2003. So that's the original deed of trust? That's the original deed of trust lien that my client's hold, Your Honor. The tax lien at issue was created in 2006, and that's shown at record 234 through 239. Deutsche Bank was the assignee of record of the mortgage lien as of February 16, 2009, as shown by a corporate assignment in the record at 240. As such, my client was, from that date forward, a readily identifiable interest holder in the property at issue. What case law is there on nonjudicial foreclosures in Texas under Mennonite, whether that is non-state action? I mean, it really does seem to me that using the legal authority of the state even to have a nonjudicial foreclosure is some sort of state action. But is that settled? Is there case law that says that? Candidly, Your Honor, I have not seen case law with respect to the application of Mennonite to foreclosures under Chapter 51. An awful lot of these cases that are cited just ignore Mennonite that I guess both sides have talked about, but certainly Appellant has cited those to us. Well, the cases that Appellant has cited are largely distinguishable from the Security State Bank and the line of cases cited in our briefing insofar as they don't involve a record lien holder bringing the claim. They're being brought by a property owner that claims that they didn't receive notice of the sale. As Security State Bank and American Home Protection v. Perkle, which was also cited in our briefing, demonstrate there's a reasonable distinction to be drawn between a property owner and a prior recorded lien holder insofar as the property owner has a continuing obligation to pay taxes on the property and can therefore set aside a total limitation simply by performing their normal obligations, whereas a record lien holder has no such obligation. Moss has been paying taxes since 2009? I don't know whether he has or not, Your Honor. Well, let's assume he hasn't. Obviously, your client hasn't. His position is that if we affirm for you to reclaim your interest, you've got to pay him back those taxes. What's your view on that? I believe that would be correct, Your Honor. I'm not sure, but my client has actually paid some of those taxes, though, Your Honor. It's simply not an issue. You probably—but it makes sense, I guess. Okay, we'll move on to another question. Judge Rosenthal applied Mennonite, as she did, but there was a little guarded language about you couldn't sit on your rights. What's your view as to whether a lien holder could wait 10 years and then collaterally attack? What's the outer limit under Mennonite? I think once the lien holder becomes aware of the tax lien sale, then they have some sort of a duty to take action. I think the key here is that— So actual knowledge would suffice? Actual knowledge would probably suffice, Your Honor. The situation here, though, is that they're challenging us on limitations under the Texas Tax Code, which provides a one-year period of time in which to set aside the entirety of the sale. We're not trying to set aside the entirety of the sale. We're pursuing a collateral attack to establish that the sale, while it may well be effective as to all other interest holders, was not as effective as to our clients. I'm sorry. No, no. There are issues here of whether this is avoidable or whether there's any statute of limitations at all discussed in the brief. Quiet title actions in Texas, I assume, have a statute of limitations to them. They do not have a statute of limitations. The case law in Texas, as cited in our brief, it's Ford v. Exxon Mobil. The general rule is that a suit in equity is not subject to a statute of limitations. Which means latches or something else would apply. How important is this in your view of Texas, of the due process issue, that this was an assignment of a tax lien? I think it's important in the sense that there's an active industry in Texas of tax lien asking these. They come in, they provide a lien. I'm thinking of the governmental origin of the lien in looking at the state action component. Is that part of your argument, that the state itself obviously would have been exercising this authority, gave that authority by payment of money to somebody else? If we do end up affirming, should we rely on that as our Mennonite connection? Well, Your Honor, to be honest, the idea that there was no state action involved is not something that was argued or discussed much at the state court level, at the district court level. It wasn't discussed much in the appellate briefing either. It was not because, quite honestly, Your Honor, we didn't believe it had been brought up as an issue. Assuming that it was, I mean, our contention was based on their belief that they had a superior lien that they had foreclosed and that therefore extinguished any inferior liens, that the only way they could get there was by having a tax lien that they were foreclosing, where they acquired the superior priority over our lien by virtue of the tax code. If they're not pursuing it under the tax code, then they, under Texas law, would have an inferior lien since it was second in time. Do you have anything else for us? No, Your Honor. I'll be happy to rely upon my brief unless the Court has any further questions. I think we do. I did. Give me a second to remember it. I did. It was interesting to me. Okay. Well, stand— Oh, oh, oh. I thought of it. I thought of it. Do you agree with his statement that as amended, the statute couldn't allow this predicament to occur again? I have not reviewed the statute as amended, Your Honor. Okay. Thanks. All right. Thanks. Do we hear the rebuttal? And I'll promise to be brief. Counsel mentioned that somehow the fact that it's a tax lien was some kind of distinguisher, but this is a foreclosure process. The defect was in the foreclosure process itself. This was not in any kind of statute. The process was under a deed of trust, a nonjudicial foreclosure. And one case, and I cited it briefly previously, which is the Rodriguez v. Aquin case. This was a 2009 case, and Judge Southwick, you were actually on the panel at this time. Quoting from that case, it says, quoting from the case, Therefore, regardless of whether Aquin knew of Rodriguez's interest in the Henley property, the Texas law imposed no requirement for Aquin to provide notice to Rodriguez. I mean, there's a direct holding that someone that acquires in an interest to someone has an inferior interest, there was no notice under Texas law to notify that person. Well, we do know that due process is triggered, state action is triggered by state law that authorizes an individual to levy on the property of another with that ex parte. Well, I don't think state law, if you pass a statute, you're dealing in issues of due process, which is taking away somebody's property. And the statute, Texas law doesn't require it. I mean, Texas foreclosure law, which is 51.002 of the Texas property code, does not require that. It does not require specifically under the law. Nobody's ever attacked that, and it's been continuously said. All you have to do is notify the debtor and those particular people that are limited in that issue. And one other thing about in terms of actual notice and things that we're saying that would qualify this particular case, too, is that when the tax lien is created, notice has to be given to the lender at that time. So when it was created in 2006, Gonzales was required by the statute to give notice to the lien holder at that time, which was Argent Mortgage. So the lender knew about it. They knew about it under the law. And they would have been notified at that particular time. And when you look at this and the point- Well, he re- I'm sorry? Argent was re-notified at the time of this sale. This, yes, it was. Okay, so- They had apparently, what had happened is that, and this brings me to another point, too, that I don't want the court to lose sight of is that I think the evidence was totally insufficient to show that they have any interest in this loan at all. Because what they show is that there was a loan that was created back in 2003. Argent Mortgage was the payee under that note at that time. No evidence until 2009, and the only evidence they provided to the court was a recorded assignment, corporate assignment, that was recorded in the deed records of Harris County, Texas. Well, that's totally insufficient to transfer the note. And it was signed by one of the nation's, quote, most prolific robo-signers, Brian Bly, and recorded. That's their only evidence that shows they have any interest in this. They never produced the note. They never produced an affidavit saying, we hold the note. They never provided any evidence as to where the location of the original note is. So, basically, there's really no evidence that they had anything. But until 2009, which was, I think it was when that was recorded was February of 2009, six or seven months prior to the foreclosure sale that occurred in this particular case, and four to five months before it would have been recorded, Argent Mortgage was the lender in this particular case. They would have received the notice. And in this particular case, this deed of trust required escrow payments. They required tax payments. The Redartes were required to pay escrow. There was an obligation for Argent Mortgage and, subsequently, Deutsche Bank and Auckland to pay the taxes. They had a contractual obligation to pay the taxes. They were supposed to be collecting them. And under that situation, I think that poses more of an important duty upon them to figure out what the heck's going on. And to sit now in 2016 and to realize that there's never been any . . . I don't think the Redartes ever paid any taxes for probably a period of twelve to thirteen years during that time period. And for these reasons, I think this Court has no alternative but to reverse and remand this case back to Judge Rosenthal. All right, Cal. Thank you for your time. Thank you both. Sorry we have kept you waiting all day, but we are in recess until tomorrow morning.